**BRAGAR EAGEL & SQUIRE, P.C.**
Lawrence P. Eagel (D.N.J. #038881983)
Melissa A. Fortunato (D.N.J. #071502013)
810 Seventh Avenue, Suite 620
New York, New York 10019
Telephone: (212) 308-5858
Facsimile: (212) 214-0506
eagel@bespc.com
fortunato@bespc.com

*Attorneys for Plaintiff*

### UNITED STATES DISTRICT COURT
### DISTRICT OF NEW JERSEY

| | |
|---|---|
| STEVE KAST, derivatively on behalf of FUTURE FINTECH GROUP, INC., <br><br> Plaintiff, <br><br> v. <br><br> SHANCHUN HUANG, JING CHEN, JOHNSON LAU, FUYOU LI, YING LI, MING YI, and MINGJIE ZHAO, <br><br> Defendants, <br><br> and <br><br> FUTURE FINTECH GROUP, INC., <br><br> Nominal Defendant. | Case No.: <br><br> **VERIFIED STOCKHOLDER DERIVATIVE COMPLAINT** <br><br> **JURY TRIAL DEMANDED** |

## INTRODUCTION

Plaintiff, Steve Kast ("Plaintiff"), by and through his counsel, derivatively on behalf of Nominal Defendant Future FinTech Group, Inc., ("Future FinTech" or the "Company"), submits this Verified Stockholder Derivative Complaint against Defendants and alleges the following upon information and belief, except as to those allegations concerning Plaintiff, which are alleged upon personal knowledge.  Plaintiff's information and belief is based upon, among other things, his counsel's investigation, which included, *inter alia*, review and analysis of (i) regulatory filings made by Future FinTech with the United States Securities and Exchange Commission ("SEC"); (ii) press releases issued and disseminated by Future FinTech; (iii) court submissions in a securities class action against certain of the Company's officers  alleging that they issued false and misleading statements of material fact and omitted material facts necessary to make other statements made not misleading, between March 10, 2020 and January 11, 2024 (the "Relevant Period") with respect to Future FinTech's business, operations, and prospects; and (iv) other publicly available information concerning Future FinTech.

## NATURE OF THE ACTION

1.      This is a stockholder derivative action asserted on behalf of Nominal Defendant Future FinTech against certain officers and the members of the Company's Board of Directors (the "Board") for the claims asserted herein to recover damages caused to the Company as described herein.

2.      Future FinTech is a fast-growing financial service and financial technology ("FinTech") Company.  The Company primarily derives its revenue from (i) an online shopping platform, Chain Cloud Mall ("CCM"), which is based on blockchain technology; (ii) supply chain financing services and trading; (iii) FinTech service business; and (iv) the application and development of blockchain-based technology in FinTech services.  Future FinTech has also

expanded into financial services and cryptocurrency market data and information service businesses.

3.    The action arises from the Individual Defendants' (defined below) issuing materially false and misleading statements in SEC filings, press releases, and proxy statements that failed to disclose a scheme by Future FinTech Chief Executive Officer ("CEO") Shanchun Huang ("Huang") to manipulate the price of Future FinTech's stock to keep it from being delisted from the Nasdaq. That scheme involved deceptive trading practices and false statements to the investing public and the SEC.

4.    Defendant Huang engaged in manipulative trading of Future FinTech stock from January 2020 through April 2020, shortly before and after becoming CEO in March 2020 according to the SEC's January 11, 2024 complaint. The manipulative trading followed a February 28, 2019 notification from Nasdaq informing the Company that its stock no longer met the minimum bid requirement for continued listing because it had traded below $1.00 for 30 consecutive days.

5.    In the midst of his manipulative trading, the Company issued a press release on March 10, 2020, announcing that it had hired Huang as Future FinTech's new CEO and touting his deep experience in the financial service and investment industry. That date marks the beginning of the Relevant Period as the Individual Defendants began their efforts to delude the investing public about Huang's qualifications and suitability to serve as the Company's CEO while concealing from investors the fact that (i) Defendant Huang manipulated the price of Future FinTech stock; (ii) the Company lied to the SEC about the nature of Defendant Huang's ownership of Future FinTech stock; (iii) Future FinTech understated its legal risk; (iv) Future FinTech did not disclose the unlawful measures Defendant Huang took to prop up the price of its stock; and (v)

VERIFIED STOCKHOLDER DERIVATIVE COMPLAINT

as a result, the Individual Defendants' positive statements about the Company's business, operations, and prospects were materially false, misleading, and lacked a reasonable basis.

6.      Allegedly arising out of the Individual Defendants' same misconduct, a federal securities fraud class action names the Company and certain Individual Defendants as defendants in a lawsuit filed in the United States District Court for the District of New Jersey captioned *Labelle v. Future FinTech Group Inc.*, Case No. 2:24-cv-00247 (D.N.J.) (the "Securities Class Action").

7.      As a result of the Individual Defendants' unlawful course of conduct, Future FinTech has sustained and will continue to sustain significant damages, including costs and expenses incurred in defending related securities class action litigation, damage to its reputation and goodwill, and exposure to further regulatory actions and penalties.

8.      As a direct and proximate result of the misconduct described herein by Individual Defendants, Future FinTech has sustained significant damages as explained below.  This action seeks to hold the Individual Defendants accountable for their breaches of fiduciary duty and other violations of law, recover damages on behalf of Future FinTech, and implement corporate governance reforms to prevent the recurrence of such misconduct.

## JURISDICTION AND VENUE

9.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because the Complaint alleges a claim for violations of Section 10(b) and 20(a) of the Exchange Act and SEC Rule 10b-5 promulgated thereunder as well as Section 14(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder.  The Court has supplemental jurisdiction over the pendent state law claims pursuant to 28 U.S.C. § 1367(a) because the state law claims form part of the same case or controversy.  This action is not a collusive one designed to confer jurisdiction on a court of the United States that it would not otherwise have.

10.     This Court has jurisdiction over each Defendant because they reside in this District or have sufficient minimum contacts with this District to render the exercise of jurisdiction by the Court permissible under traditional notions of fair play and substantial justice.  The Court has personal jurisdiction over the Nominal Defendant because it is authorized to do business in this state and has consented to service in this state.

11.     Venue is proper in this District pursuant to 28 U.S.C. § 1391 because a substantial portion of the transactions and wrongs complained of herein, including the Defendants' primary participation in the wrongful acts detailed herein and violation of fiduciary duties owed to Future FinTech.  Venue is also proper pursuant to 28 U.S.C. § 1401 because Nominal Defendant Future FinTech could have sued the same Defendants in this District.

## PARTIES

12.     Plaintiff is a Future FinTech stockholder and has continuously held Future FinTech stock from the time of the wrongdoing alleged herein until the present.  Plaintiff will fairly and adequately represent Future FinTech's interest in this action.

13.     Nominal Defendant Future FinTech is incorporated under the laws of Florida, and its principal executive offices are located at Americas Tower, 1177 Avenue of The Americas, Suite 5100, New York, New York 10036.  Future FinTech's common stock trades on the Nasdaq exchange under the symbol "FTFT."

14.     Defendant Huang served as Future FinTech's CEO and as a member of the Board from March 2020 until August 5, 2024.

15.     Defendant Jing Chen ("Chen") served as the Company's Chief Financial Officer ("CFO") from 2019 until November 2020.  Defendant Chen also served as Vice President of FinTech from November 2020 to April 2023.

16.     Defendant Johnson Lau ("Lau") has served as a member of the Board since December 2014 and as Chair of the Audit Committee since at least 2020.

17.     Defendant Fuyou Li ("Fuyou Li") has served as a member of the Board since May 2015 and as Chairman of the Board since June 2021.  Defendant Fuyou Li has served as a member of the Audit Committee since at least 2020.

18.     Defendant Ying Li ("Ying Li") has served as a member of the Board since June 2021.  Ying Li has served as the vice president of the Company and a director of Future FinTech (Hong Kong) Limited, a wholly owned subsidiary of the Company since July 2016.  From October 2011 to December 2019, Ms. Li served as the secretary of the Board of the Company.

19.     Defendant Ming Yi ("Yi") has served as the Company's CFO since November 2020.

20.     Defendant Mingjie Zhao ("Zhao") has served as a member of the Board since July 2020.  Defendant Zhao has served as a member of the Audit Committee since at least 2020.

21.     Mingyong Hu is a relevant non-party who was appointed as a member of the Board on October 1, 2024.

22.     Hu Li is a relevant non-party who has served as CEO, President, and a member of the Board since August 5, 2024.  Prior to that time, Hu Li had served as a director and CEO for FTFT International Securities and Futures Limited, a wholly owned subsidiary of the Company, and as Future FinTech's Corporate Secretary since June 2019.

23.     The following Defendants are hereinafter referred to as the "Individual Defendants": Huang, Chen, Lau, Fuyou Li, Hu Li, Ying Li, and Zhao.

24.     The following Individual Defendants are collectively referenced herein as the "Director Defendants": Lau, Fuyou Li, Ying Li, and Zhao.

25.     The following Individual Defendants are collectively referenced herein as the "Officer Defendants": Chen, Huang, and Yi.

26.     The following Individual Defendants are collectively referenced herein as the "Audit Committee Defendants": Lau, Fuyou Li, and Zhao.

27.     The following Individual Defendants are collectively referenced herein as the "Securities Class Action Defendants": Chen, Huang, and Yi.

28.     The Individual Defendants and Nominal Defendant are collectively referenced herein as "Defendants."

## THE INDIVIDUAL DEFENDANTS OWE FIDUCIARY DUTIES TO THE COMPANY AND ITS STOCKHOLDERS

29.     At all times relevant to this case, the conduct of the Individual Defendants was governed by well-recognized rules to protect the Company and its Stockholders, the members of the public who had invested in Future FinTech.

30.     Because of their positions as officers and/or directors of the Company and their ability to control its business and corporate affairs, the Individual Defendants owed the Company and its stockholders the fiduciary obligations of good faith, loyalty, and candor and were and are required to use their utmost ability to control and manage the Company in a fair, just, honest, and equitable manner.

31.     The Individual Defendants were and are required to act in furtherance of the best interests of the Company and its stockholders to benefit all stockholders equally and not in furtherance of their personal interest or benefit.

32.     Each of the Company's directors owes to the Company and its stockholders fiduciary duties of care and loyalty, including good faith, oversight, and candor, to exercise good

faith and diligence in the administration of the affairs of the Company and in the use and preservation of its property and assets.

33.    Because of their positions of control and authority as directors and/or officers of the Company, the Individual Defendants were able to and did, directly and/or indirectly, exercise control over the wrongful acts alleged herein.

34.    To discharge their duties, the Individual Defendants were required to exercise reasonable and prudent supervision over the management, policies, practices, and controls of the Company.  By virtue of such duties, the officers and directors of Future FinTech were required to do the following:

- Ensure that the Company complied with its legal obligations and requirements, including acting only within the scope of its legal authority and disseminating truthful and accurate statements to the SEC and the investing public;

- Conduct the affairs of the Company in a lawful, efficient, and business-like manner to make it possible for the Company to provide the highest quality performance of its business, to avoid wasting the Company's assets, and to maximize the value of the Company's stock;

- Properly and accurately inform investors and analysts as to the true financial condition of the Company at any given time, make accurate statements about the Company's financial results and prospects, and ensure that the Company maintained an adequate system of financial controls such that the Company's financial reporting would be true and accurate at all times;

VERIFIED STOCKHOLDER DERIVATIVE COMPLAINT

- Remain informed as to how the Company conducted its operations, and, upon notice of imprudent or unsound conditions or practices, make reasonable inquiry into the nature and cause of such conditions and practices, correct such conditions or practices, and make such disclosures as necessary to comply with federal and state securities laws; and

- Ensure that the Company was operated in a diligent, honest, and prudent manner in compliance with all applicable federal, state, and local laws, rules, and regulations.

35.    The Individual Defendants knowingly violated their obligations as directors and officers of the Company, acting without good faith and consciously disregarding their duties to the Company and its Stockholders despite their knowledge of the risk of serious injury to the Company.

36.    Because of their positions of control and authority, the Individual Defendants were able to exercise control over the wrongful acts complained of herein, as well as the contents of the various public statements issued by Future FinTech.

## CODE OF BUSINESS CONDUCT AND ETHICS

37.    Future FinTech's Board of Directors has established a comprehensive Code of Business Conduct and Ethics (the "Code") to foster a culture of integrity and accountability.  This Code imposes stringent ethical obligations on both Director and Officer Defendants, extending beyond their baseline legal duties.

38.    The Code is designed to promote the following:

- Honest and ethical conduct, including the ethical handling of actual or apparent conflicts of interest between personal and professional relationships;

VERIFIED STOCKHOLDER DERIVATIVE COMPLAINT

- Full, fair, accurate, timely and understandable disclosure in the reports and documents the Company files with, or submits to, the Securities and Exchange Commission, as well as in other public communications made by or on behalf of the Company;

- Compliance with applicable governmental laws, rules and regulations;

- Prompt reporting to the appropriate person of vi olations of laws, rules, regulations, this Code and other Company policies; and

- Accountability for adherence to this Code.

39.     Under the title "Personal and Professional Integrity" the Code states as follows:

All staff, board members, and agents of Future FinTech must act with honesty, integrity, and openness in all their dealings as representatives of the Company. The Company promotes a working environment that values respect, fairness, and integrity.

Each person must:

- Act with integrity, including being honest and candid while still maintaining the confidentiality of the Company's information where required or in the Company's interests.

- Observe all applicable governmental laws, rules and regulations.

- Comply with the requirements of applicable accounting and auditing standards, as well as Company policies, in the maintenance of a high standard of accuracy and completeness in the Company's financial records and other business-related information and data.

                              *        *        *

- Adhere to a high standard of business ethics and not seek competitive advantage through unlawful or unethical business practices.

                              *        *        *

- Refrain from taking advantage of anyone through manipulation, concealment, abuse of privileged information, misrepresentation of material facts or any other unfair-dealing practice.

- Protect the assets of the Company and ensure their proper use.

- Refrain from taking for themselves personal opportunities that are discovered through the use of corporate assets or using corporate assets, information or position for general personal gain outside the scope of employment with the Company.

**AUDIT COMMITTEE CHARTER**

40.     The Audit Committee Charter (the "Audit Charter") places additional duties and responsibilities upon the members of the Board's Audit Committee, which consisted of Lau, Fuyou Li, and Zhao during the Relevant Period.

41.     Pursuant to the Audit Charter, the overarching duties of the Audit Committee and its members include the following:

- assisting the Board of Directors in fulfilling its responsibilities by reviewing: (i) the financial reports provided by the Company to the SEC, the Company's stockholders or to the general public, and (ii) the Company's internal financial and accounting controls;

- recommending, establishing and monitoring procedures designed to improve the quality and reliability of the disclosure of the Company's financial condition and results of operations;

- overseeing the appointment, compensation, and evaluation of the qualifications and independence of the Company's independent auditors;

- overseeing the Company's compliance with legal and regulatory requirements;

- overseeing the adequacy of the Company's internal controls and procedures to promote compliance with accounting standards and applicable laws and regulations;

- engaging advisors as necessary; and

- determining the funding from the Company that is necessary or appropriate to carry out the Committee's duties.

VERIFIED STOCKHOLDER DERIVATIVE COMPLAINT

## DEFENDANTS BREACH THEIR DUTIES
## TO THE COMPANY AND ITS STOCKHOLDERS

42.     In violation of their fiduciary duties to Future FinTech, the Individual Defendants

willfully or recklessly made, or caused or permitted the Company to make, false and misleading

statements and omissions of material fact that failed to disclose, *inter alia*, that (i) Defendant

Huang manipulated the price of Future FinTech stock; (ii) the Company lied to the SEC about the

nature of Defendant Huang's ownership of Future FinTech stock; (iii) Future FinTech understated

its legal risk; and (iv) Future FinTech did not disclose the unlawful measures Defendant Huang

took to prop up the price of its stock.

**March 10, 2020 Press Release**

43.     On March 10, 2020, the Company issued a press release announcing that it had

hired Defendant Huang as Future FinTech's new CEO.  Press Release, Future FinTech Group Inc.,

Future FinTech Announces Shanchun Huang as New CEO (March 10, 2020) ("March 10, 2020

Press Release").  In relevant part, the press release touted Defendant Huang's experience, stating

as follows:

> Mr. Huang has over 16 years of experience in the financial service and investment
> industry.  He has provided financing solutions and advice for high-growth
> companies in China and successfully assisted 37 enterprises to complete
> fundraising or public offerings in China.  Most recently, Mr. Huang served as the
> president of Wealth Index (Beijing) Fund Management Co., Ltd., which provides
> private equity fund management service, from March 2011 to March 2020 and
> president of Wealth Index (Beijing) International Investment Consulting Co.,
> Ltd., which provides investment management and consulting services for non-
> securities related business, from August 2004 to March 2020.  From May 2001
> to June 2004, Mr. Huang was the vice president of Zhejiang Geely Holding Group
> Corporation, a global automobile company headquartered in Hangzhou, China.
> Mr. Huang graduated from Hefei Staff University of Science and Technology in
> July 1986 majoring in news collection and editing.
>
> Mr. Huang is also a prolific writer and has published four books in the finance
> and investment area in China.  These books include How to Raise Money to Start
> a Business, the Road to Red Chips, Comparison and Research Among Global
> Capital Markets, and The Practice of Small and Medium Enterprises Listed

Overseas and Hong Kong.  Mr. Huang is the Knight Commander of Grace of the Order of Saint Lazarus of Jerusalem, and the first Grand Prior of the Grand Priory of China.

"We are very pleased that Mr. Huang will be joining the team as our Chief Executive Officer," said Yongke Xue, Chairman of the Board of the Company. "A key pillar of the Company's strategy is bringing onboard top leadership to accelerate our blockchain based e-commerce, digital asset technology and applications, and financial technology and service business.  Mr. Huang brings the right mix of talent, experience and success to lead the Company's next stage of growth."

"I'm thrilled to join Future FinTech's leadership team at a time when blockchain and traditional industry are intersecting to create breakthroughs," said Shanchun Huang.    "I look forward to working with the team to execute on our transformational growth strategy."

44.    The statements in ¶ 43 above were materially false and misleading for the reasons stated below at the end of this section.

**October 28, 2020 Proxy Statement**

45.    On October 28, 2020, Future FinTech filed its proxy statement on Form DEF 14A with the SEC.  Future FinTech Group Inc., Proxy Statement (Form DEF 14A) (Oct. 28, 2020) (the "2020 Proxy Statement").  This important document—pursuant to which Defendants Huang, Lau, Zhao, and Fuyou Li solicited proxies to vote at the annual 2020 stockholder meeting—sought stockholder approval for several important matters, including the re-election of these individuals to the Board of Directors.

46.    The 2020 Proxy Statement asked Future FinTech stockholders to vote to, among other things, (1) reelect the Director Defendants to the Board for a one year term ending as of the Company's annual meeting of stockholders in fiscal year 2021; (2) ratify the appointment of BF Borgers CPA P.C. as Future FinTech's independent registered public accounting firm for the fiscal year ending December 31, 2020; and (3) adopt and approve the Future FinTech Group Inc. 2020 Omnibus Equity Plan.

VERIFIED STOCKHOLDER DERIVATIVE COMPLAINT

47.    The 2020 Proxy Statement contained misleading endorsements of Defendant Huang's qualifications and value to the Company.  Specifically, it stated that "[t]he Board believes that Mr. Huang's significant experience in investment and management will be an asset to the Company and the Board."  This statement, presented as fact, failed to disclose Huang's involvement in manipulative trading practices and misrepresented his true impact on the Company. By emphasizing Huang's purported expertise while omitting his misconduct, the 2020 Proxy Statement provided stockholders with a materially incomplete and inaccurate basis for their voting decisions.

48.    It also stated the following:

**Code of Ethics and Governance Program**

We have adopted a code of business conduct and ethics that applies to all of our employees, officers and directors, including those officers responsible for financial reporting.  Our code of business conduct and ethics is available on our website at www.ftftex.com and may be found by first clicking on "Investors," then "Corporate Governance" and then "Governance Documents."  We intend to disclose any amendments to the code, or any waivers of its requirements, on our website.

*        *        *

**Audit Committee and Report of the Audit Committee**

. . . The audit committee has a written charter, which is available on the Company's website at http://www.ftftex.com.

Management is responsible for the Company's internal controls and the financial reporting process.  The independent accounting firm is responsible for performing an independent audit of the Company's consolidated financial statements in accordance with the standards of the Public Company Accounting Oversight Board (United States) ("PCAOB") and issuing reports thereon.  The audit committee's responsibility is to monitor these processes.  The audit committee meets with management, the leader of the internal audit function, and the independent accounting firm to facilitate communication.  In addition, the audit committee appoints the Company's independent accounting firm and pre-approves all audit and non-audit services to be performed by the independent accounting firm.

*       *       *

**Risk Management**

The Chief Executive Officer and senior management are primarily responsible for identifying and managing the risks facing the Company under the oversight and supervision of the Board.  The Chief Executive Officer reports to the Board of Directors regarding any risks identified and steps it is taking to manage those risks.  In addition, the Audit Committee assists the Board in fulfilling its oversight responsibilities with respect to risk in the areas of financial reporting and internal controls.

49.     The statements in ¶¶ 47-48 above were materially false and misleading for the reasons stated below at the end of this section.

**November 4, 2020 Amended Annual Report**

50.     On November 4, 2020, the Company filed with the SEC an amended report for its full year 2019 for the period ending December 31, 2019 signed by Defendants Chen, Huang, Lau, Fuyou Li, and Zhao.  Future FinTech Group, Inc., Amended Annual Report (Form 10-K/A) (Nov. 4, 2020) ("2019 Form 10-K/A").  Attached to the 2019 Form 10-K/A were certifications pursuant to the Sarbanes-Oxley Act of 2002 ("SOX") signed by Defendants Chen and Huang attesting to the accuracy of financial reporting, the disclosure of any material changes to the Company's internal control over financial reporting, and the disclosure of all fraud.

51.     The 2019 Form 10-K/A stated the following risk disclosure regarding the potential delisting of the Company from the Nasdaq:

*__In recent years, our Common Stock has been in danger of being delisted from the NASDAQ Stock Market ("NASDAQ").__*

On each of April 20, 2016, May 24, 2016 and August 17, 2016, the Company received a notification letter from the staff of the Listing Qualifications Department of NASDAQ (the "Staff") indicating that the Company was not in compliance with NASDAQ's continued listing requirements because the Company was not in compliance with the NASDAQ Listing Rule 5250(c)(1) (the "Rule") with respect to certain of its annual and quarterly reports.

On October 12, 2016, the Company received a delisting determination letter (the "Determination Letter") from the Staff notifying the Company that because the Company had not filed its Annual Report on Form 10-K for the fiscal year ended December 31, 2015 (the "Form 10- K") and its Quarterly Reports on Form 10-Q for the quarterly periods ended March 31, 2016 and June 30, 2016, (together, the "Reports") by October 11, 2016, the deadline by which the Company was to file all Reports in order to regain compliance with the Rule, the Company's common stock was subject to delisting from the NASDAQ Global Market.

On October 19, 2016, the Company requested a hearing before the NASDAQ Hearings Panel (the "Panel") under Listing Rule 5815(a) to appeal the delisting determination from the Staff.  On November 2, 2016, the Company was granted an extended stay as to the suspension of the Company's shares from trading by the Panel until the Company's scheduled hearing before the Panel on December 15, 2016 and issuance of a final Panel decision.  Following a hearing, the Panel required that the Company regain compliance by January 31, 2017.  By letter dated February 2, 2017, the Panel notified the Company that (i) the Company had regained compliance, (ii) the Company's Common Stock would continue to be listed on the NASDAQ Global Market, and (iii) the Panel was closing the matter.

On December 1, 2017, the Company received written notice from NASDAQ stating that the Company was not in compliance with the requirement of the minimum Market Value of Publicly Held Shares ("MVPHS") of $5,000,000 for continued listing on the NASDAQ Global Market, as set forth in NASDAQ Listing Rule 5450(b)(1)(C).  The Company received notice that it had regained compliance on January 4, 2018.

On November 26, 2018, the Company received written notice from the NASDAQ Stock Market stating that the Company was not in compliance with the requirement of maintaining a minimum of $10,000,000 in stockholders' equity for continued listing on the NASDAQ Global Market, as set forth in NASDAQ Listing Rule 5450(b)(1)(A).  Alternatively, the Company could consider applying to transfer the Company's securities to the NASDAQ Capital Market, which has a minimum stockholders' equity requirement of $2,500,000.

On December 28, 2018, the Company received confirmation from the Nasdaq Stock Market that its application to transfer the listing of its common stock from the Nasdaq Global Market to the Nasdaq Capital Market (the "Capital Market") had been approved.  The Company's common stock began trading on the Capital Market on December 31, 2018.

On February 28, 2019, the Company received a letter from NASDAQ notifying the Company that, because the closing bid price for the Company's common stock listed on NASDAQ was below $1.00 for 30 consecutive trading days, the Company no longer met the minimum bid price requirement for continued listing on NASDAQ under NASDAQ Marketplace Rule 5550(a)(2).  On May 7, 2019, the Company received a written notification from the NASDAQ Stock Market

Listing Qualifications Staff indicating that the Company has regained compliance with the $1.00 minimum closing bid price requirement and that the matter is now closed.

On April 17, 2019, the Company received a notification letter from NASDAQ stating the Company was not in compliance with NASDAQ Listing Rule 5250(c)(1), due to its failure to timely file its Annual Report on Form 10-K for the year ended December 31, 2018 (the "2018 10-K").

On May 21, 2019, the Company received a notification letter from NASDAQ stating the Company was not in compliance with NASDAQ Listing Rule 5250(c)(1), due to its failure to timely file its Quarterly Report on Form 10-Q for the quarter ended March 31, 2019.

On August 20, 2019, the Company received a notification letter from the NASDAQ stating the Company was not in compliance with NASDAQ Listing Rule 5250(c)(1), due to its failure to timely file its Quarterly Report on Form 10-Q for the quarter ended June 30, 2019.

On October 16, 2019, the Company received a letter from the NASDAQ Listing Qualifications Staff notifying the Company that it has regained compliance with NASDAQ's periodic filing requirements for continued listing on the Nasdaq Capital Market.  The letter noted that as a result of the September 3, 2019 filing of the 201810-K and the September 30, 2019 filing of the Forms 10-Q for the periods ended March 31, and June 30, 2019 with the Securities and Exchange Commission, the Company has regained compliance with Listing Rule 5250(c)(1) and the matter is now closed.

On September 4, 2019, the Company received written notice from the NASDAQ stating that the Company did not meet the requirement of maintaining a minimum of $2,500,000 in stockholders' equity for continued listing on the NASDAQ Capital Market, as set forth in NASDAQ Listing Rule 5550(b)(1), the Company also does not meet the alternative of market value of listed securities of $35 million under NASDAQ Listing Rule 5550(b)(2) or net income from continuing operations of $500,000 in the most recently completed fiscal year or in two of the last three most recently completed fiscal years under NASDAQ Listing Rule 5550(b)(3), and the Company is no longer in compliance with the NASDAQ Listing Rules.  On March 18, 2020, the Company received written notice from NASDAQ stating that the Company complies with the Listing Rule 5550(b)(1). However, as noted in NASDAQ letter dated December 17, 2019, if the Company fails to evidence such compliance upon filing its Form 10-K for the fiscal year ended December 31, 2019, it may be subject to delisting.  At that time, NASDAQ will provide written notification to the Company, which may then appeal Staff's determination to a Hearings Panel.

(Emphasis in original).

52.     The statements in ¶¶ 50-51 above were materially false and misleading for the reasons stated below at the end of this section.

**March 12, 2021 Initial Insider Holdings Report**

53.     On March 12, 2021, the Company filed with the SEC an initial insider holdings report on Form 3, which had a reporting date of March 4, 2020, the day Defendant Huang became the CEO of Future FinTech.  Future FinTech Group, Inc., Initial Insider Holdings Report (Form 3) (Mar. 12, 2021) (the "March 12, 2021 Form 3").  The March 12, 2021 Form 3 was signed by Defendant Huang.

54.     The March 12, 2021 Form 3 showed that Defendant Huang did not hold any Future FinTech shares:



55.     The March 12, 2021 Form 3 omitted the fact that Defendant Huang had owned Future FinTech stock at the time he became the Company's CEO.  It was also materially false and misleading for the reasons stated below at the end of this section.

**April 15, 2021 Annual Report**

56.     On April 15, 2021, the Company filed with the SEC its full year 2020 report for the period ending December 31, 2020 signed by Defendants Chen, Huang, Lau, Fuyou Li, and Zhao. Future FinTech Group, Inc., Annual Report (Form 10-K) (Apr. 15, 2021) ("2020 Form 10-K"). Attached to the 2020 Form 10-K were certifications pursuant to SOX signed by Defendants Huang and Yi attesting to the accuracy of financial reporting, the disclosure of any material changes to the Company's internal control over financial reporting, and the disclosure of all fraud.

57.     The 2020 Form 10-K stated the following risk disclosure regarding the potential delisting of the Company from the Nasdaq:

> ***In recent years, our Common Stock has been in danger of being delisted from the NASDAQ Stock Market ("NASDAQ").***
>
> On February 28, 2019, the Company received a letter from NASDAQ  notifying the Company that, because the closing bid price for the Company's common stock listed on NASDAQ was below $1.00 for 30 consecutive trading days, the Company no longer met the minimum bid price requirement for continued listing on NASDAQ under NASDAQ Marketplace Rule 5550(a)(2).  On May 7, 2019, the Company received a written notification from the NASDAQ Stock Market Listing Qualifications Staff indicating that the Company has regained compliance with the $1.00 minimum closing bid price requirement and that the matter is now closed.
>
> On April 17, 2019, the Company received a notification letter from NASDAQ stating the Company was not in compliance with NASDAQ Listing Rule 5250(c)(1), due to its failure to timely file its Annual Report on Form 10-K for the year ended December 31, 2018 (the "2018 10-K").  On May 21, 2019, the Company received a notification letter from NASDAQ stating the Company was not in compliance with NASDAQ Listing Rule 5250(c)(1), due to its failure to timely file its Quarterly Report on Form 10-Q for the quarter ended March 31, 2019.
>
> On August 20, 2019, the Company received a notification letter from the NASDAQ stating the Company was not in compliance with NASDAQ Listing Rule 5250(c)(1), due to its failure to timely file its Quarterly Report on Form 10-Q for the quarter ended June 30, 2019.
>
> On October 16, 2019, the Company received a letter from the NASDAQ notifying the Company that it has regained compliance with NASDAQ's periodic filing

requirements for continued listing on the Nasdaq Capital Market. The letter noted that as a result of the September 3, 2019 filing of the Form 10-K for the year ended on December 31, 2018 and the September 30, 2019 filing of the Forms 10-Q for the periods ended March 31, and June 30, 2019 with the Securities and Exchange Commission, the Company has regained compliance with Listing Rule 5250(c)(1) and the matter is now closed.

On September 4, 2019, the Company received written notice from the NASDAQ stating that the Company did not meet the requirement of maintaining a minimum of $2,500,000 in stockholders' equity for continued listing on the NASDAQ Capital Market, as set forth in NASDAQ Listing Rule 5550(b)(1), the Company also does not meet the alternative of market value of listed securities of $35 million under NASDAQ Listing Rule 5550(b)(2) or net income from continuing operations of $500,000 in the most recently completed fiscal year or in two of the last three most recently completed fiscal years under NASDAQ Listing Rule 5550(b)(3), and the Company is no longer in compliance with the NASDAQ Listing Rules. On March 18, 2020, the Company received written notice from NASDAQ stating that the Company complies with the Listing Rule 5550(b)(1).

On November 4, 2019, the Company received a letter from the Nasdaq notifying the Company that, because the closing bid price for the Company's common stock listed on Nasdaq was below $1.00 for 30 consecutive trading days, the Company no longer meets the minimum bid price requirement for continued listing on Nasdaq under Nasdaq Marketplace Rule 5550(a)(2), which requires a minimum bid price of $1.00 per share. On April 14, 2020, the Company received a written notification from the Nasdaq indicating that the Company has regained compliance with the $1.00 minimum closing bid price requirement and that the matter is now closed.

(Emphasis in original).

58.    The statements in ¶¶ 56-57 above were materially false and misleading for the reasons stated below at the end of this section.

### October 19, 2021 and October 27, 2022 Proxy Statements

59.    Future FinTech filed its 2021 and 2022 Proxy Statements on October 19, 2021, and October 27, 2022, respectively. Future FinTech Group Inc., Proxy Statement (Form DEF 14A) (Oct. 19, 2021) (the "2021 Proxy Statement") and Future FinTech Group Inc., Proxy Statement (Form DEF 14A) (Oct. 27, 2022) (the "2022 Proxy Statement"). These important documents—pursuant to which Defendants Huang, Lau, Zhao, Fuyou Li, and Ying Li solicited stockholder

votes at the Company's respective annual meetings in 2021 and 2022—sought stockholder approval for several important matters, most notably the re-election of these individuals to the Board.

60.     With the exception of the Company's website reference, the 2021 and 2022 Proxy Statements also contained the same information as the 2020 Proxy Statement excerpted above at ¶ 48.

### March 22, 2023 Amended Annual Report

61.     The campaign continued a few months later.  On March 22, 2023, the Company filed with the SEC an amended report for its full year 2021 for the period ending December 31, 2021 signed by Defendant Huang.  Future FinTech Group, Inc., Amended Annual Report (Form 10-K/A) (Mar. 22, 2023) ("2021 Form 10-K/A").  Attached to the 2021 Form 10-K/A were certifications pursuant to SOX signed by Defendants Huang and Yi attesting to the accuracy of financial reporting, the disclosure of any material changes to the Company's internal control over financial reporting, and the disclosure of all fraud.

62.     The 2021 Form 10-K/A stated the following risk disclosure regarding the potential delisting of the Company from the Nasdaq:

> ***In recent years, our Common Stock has been in danger of being delisted from the NASDAQ Stock Market ("NASDAQ").***
>
> On February 28, 2019, the Company received a letter from NASDAQ notifying the Company that, because the closing bid price for the Company's common stock listed on NASDAQ was below $1.00 for 30 consecutive trading days, the Company no longer met the minimum bid price requirement for continued listing on NASDAQ under NASDAQ Marketplace Rule 5550(a)(2).  On May 7, 2019, the Company received a written notification from the NASDAQ Stock Market Listing Qualifications Staff indicating that the Company has regained compliance with the $1.00 minimum closing bid price requirement and that the matter is now closed.
>
> On April 17, 2019, the Company received a notification letter from NASDAQ stating the Company was not in compliance with NASDAQ Listing Rule

5250(c)(1), due to its failure to timely file its Annual Report on Form 10-K for the year ended December 31, 2018 (the "2018 10-K"). On May 21, 2019, the Company received a notification letter from NASDAQ stating the Company was not in compliance with NASDAQ Listing Rule 5250(c)(1), due to its failure to timely file its Quarterly Report on Form 10-Q for the quarter ended March 31, 2019.

On August 20, 2019, the Company received a notification letter from the NASDAQ stating the Company was not in compliance with NASDAQ Listing Rule 5250(c)(1), due to its failure to timely file its Quarterly Report on Form 10-Q for the quarter ended June 30, 2019.

On October 16, 2019, the Company received a letter from the NASDAQ notifying the Company that it has regained compliance with NASDAQ's periodic filing requirements for continued listing on the Nasdaq Capital Market. The letter noted that as a result of the September 3, 2019 filing of the Form 10-K for the year ended on December 31, 2018 and the September 30, 2019 filing of the Forms 10-Q for the periods ended March 31, and June 30, 2019 with the Securities and Exchange Commission, the Company has regained compliance with Listing Rule 5250(c)(1) and the matter is now closed.

On September 4, 2019, the Company received written notice from the NASDAQ stating that the Company did not meet the requirement of maintaining a minimum of $2,500,000 in stockholders' equity for continued listing on the NASDAQ Capital Market, as set forth in NASDAQ Listing Rule 5550(b)(1), the Company also does not meet the alternative of market value of listed securities of $35 million under NASDAQ Listing Rule 5550(b)(2) or net income from continuing operations of $500,000 in the most recently completed fiscal year or in two of the last three most recently completed fiscal years under NASDAQ Listing Rule 5550(b)(3), and the Company is no longer in compliance with the NASDAQ Listing Rules. On March 18, 2020, the Company received written notice from NASDAQ stating that the Company complies with the Listing Rule 5550(b)(1).

On November 4, 2019, the Company received a letter from the Nasdaq notifying the Company that, because the closing bid price for the Company's common stock listed on Nasdaq was below $1.00 for 30 consecutive trading days, the Company no longer meets the minimum bid price requirement for continued listing on Nasdaq under Nasdaq Marketplace Rule 5550(a)(2), which requires a minimum bid price of $1.00 per share. On April 14, 2020, the Company received a written notification from the Nasdaq indicating that the Company has regained compliance with the $1.00 minimum closing bid price requirement and that the matter is now closed.

On March 1, 2022, Future FinTech Group Inc. (the "Company") received a letter from the Nasdaq Stock Market ("Nasdaq") notifying the Company that, because the closing bid price for the Company's common stock listed on Nasdaq was below $1.00 for 30 consecutive trading days, the Company no longer meets the

minimum bid price requirement for continued listing on Nasdaq under Nasdaq Marketplace Rule 5550(a)(2), which requires a minimum bid price of $1.00 per share (the "Minimum Bid Price Requirement"). The notification has no immediate effect on the listing of the Company's common stock. In accordance with Nasdaq Marketplace Rule 5810(c)(3)(A), the Company has a period of 180 calendar days from the date of notification, until August 29, 2022 (the "Compliance Period"), to regain compliance with the Minimum Bid Price Requirement. If at any time before the expiration of the Compliance Period the bid price of the Company's common stock closes at or above $1.00 per share for a minimum of 10 consecutive business days, Nasdaq will provide written notification that the Company has achieved compliance with the Minimum Bid Price Requirement. If the Company does not regain compliance by the end of the Compliance Period, the Company may be eligible for an additional 180 calendar day period to regain compliance. To qualify, the Company will be required to meet the continued listing requirement for market value of publicly held shares and all other initial listing standards for The Nasdaq Capital Market, with the exception of the bid price requirement, and will need to provide written notice of its intention to cure the deficiency during the second compliance period by effecting a reverse stock split, if necessary. However, if it appears to Nasdaq that the Company will not be able to cure the deficiency, or if the Company is otherwise not eligible, Nasdaq will provide notice that the Company's securities will be subject to delisting. The Company intends to continue actively monitoring the bid price for its common stock between now and the expiration of the Compliance Period and will consider all available options to resolve the deficiency and regain compliance with the Minimum Bid Price Requirement.

(Emphasis in original).

63. The statements in ¶¶ 60-62 above were materially false and misleading for the reasons stated below at the end of this section.

## April 19, 2023 Annual Report

64. On April 19, 2023, the Company filed with the SEC its full year 2022 report for the period ending December 31, 2022 signed by Defendant Huang. Future FinTech Group, Inc., Annual Report (Form 10-K) (Apr. 29, 2023) (the "2022 Form 10-K"). Attached to the 2022 Form 10-K were certifications pursuant to SOX signed by Defendants Huang and Yi attesting to the accuracy of financial reporting, the disclosure of any material changes to the Company's internal control over financial reporting, and the disclosure of all fraud.

65. The 2022 Form 10-K stated the following legal risks disclosures:

If we become subject to additional scrutiny, criticism and negative publicity involving U.S.-listed China-based companies, we may have to expend significant resources to investigate and resolve the matter which could harm our business operations, any offering and our reputation and could result in a loss of your investment in our  shares, especially if such matter cannot be addressed and resolved favorably.

Recently, U.S. public companies that have substantially operations in China have been the subject of intense scrutiny, criticism and negative publicity by investors, financial commentators and regulatory agencies.

Much of the scrutiny, criticism and negative publicity has centered around financial and accounting irregularities, a lack of effective internal controls over financial accounting, inadequate corporate governance policies or a lack of adherence thereto and, in some cases, allegations of fraud.  As a result of the scrutiny, criticism and negative publicity, the publicly traded stock of many U.S.-listed China-based companies has decreased in value and, in some cases, has become virtually worthless.  Many of these companies have been subject to shareholder lawsuits and SEC enforcement actions and have conducted internal and external investigations into the allegations.

The Company has received subpoenas from the SEC's Division of Enforcement requiring us to produce documents and detailed information relating to, among other things, the Company's accounting procedures and treatment, management oversight, and the sale of HeDeTang Holdings (HK) Ltd. to New Continent International Co., Ltd.  The Company has provided responsive documents and information and will continue to cooperate with regulator and produce requested documents and information.  It is not clear what effect this sector-wide scrutiny, criticism and negative publicity will have on us and our business.  If we become the subject of any unfavorable allegations, whether such allegations are proven to be true or untrue, we will have to expend significant resources to investigate such allegations and/or defend our company.  This situation may be a major distraction to our management.   If such allegations are not proven to be groundless, our business operations will be severely hindered and your investment in our shares could be rendered worthless.

66.    The 2022 Form 10-K stated the following risk disclosure regarding the potential

delisting of the Company from the Nasdaq:

***In recent years, our Common Stock has been in danger of being delisted from the NASDAQ Stock Market ("NASDAQ").***

Our common stock is currently listed on the Nasdaq Capital Market.  The NASDAQ Stock Market LLC has requirements that a company must meet in order to remain listed on NASDAQ, for example, NASDAQ rules require us to maintain a minimum bid price of $1.00 per share of our common stock.  We may

be unable to meet NASDAQ listing requirements, including minimum bid price, minimum levels of stockholders' equity or market values of our common stock in which case, our common stock could be delisted.  If our common stock were to be delisted, the liquidity of our common stock would be materially adversely affected and the market price of our common stock could decrease.

On February 28, 2019, the Company received a letter from NASDAQ notifying the Company that, because the closing bid price for the Company's common stock listed on NASDAQ was below $1.00 for 30 consecutive trading days, the Company no longer met the minimum bid price requirement for continued listing on NASDAQ under NASDAQ Marketplace Rule 5550(a)(2).  On May 7, 2019, the Company received a written notification from the NASDAQ Stock Market Listing Qualifications Staff indicating that the Company has regained compliance with the $1.00 minimum closing bid price requirement and that the matter is now closed.

On April 17, 2019, the Company received a notification letter from NASDAQ stating the Company was not in compliance with NASDAQ Listing Rule 5250(c)(1), due to its failure to timely file its Annual Report on Form 10-K for the year ended December 31, 2018 (the "2018 10-K").  On May 21, 2019, the Company received a notification letter from NASDAQ stating the Company was not in compliance with NASDAQ Listing Rule 5250(c)(1), due to its failure to timely file its Quarterly Report on Form 10-Q for the quarter ended March 31, 2019.

On August 20, 2019, the Company received a notification letter from the NASDAQ stating the Company was not in compliance with NASDAQ Listing Rule 5250(c)(1), due to its failure to timely file its Quarterly Report on Form 10-Q for the quarter ended June 30, 2019.

On October 16, 2019, the Company received a letter from the NASDAQ notifying the Company that it has regained compliance with NASDAQ's periodic filing requirements for continued listing on the Nasdaq Capital Market.  The letter noted that as a result of the September 3, 2019 filing of the Form 10-K for the year ended on December 31, 2018 and the September 30, 2019 filing of the Forms 10-Q for the periods ended March 31, and June 30, 2019 with the Securities and Exchange Commission, the Company has regained compliance with Listing Rule 5250(c)(1) and the matter is now closed.

On September 4, 2019, the Company received written notice from the NASDAQ stating that the Company did not meet the requirement of maintaining a minimum of $2,500,000 in stockholders' equity for continued listing on the NASDAQ Capital Market, as set forth in NASDAQ Listing Rule 5550(b)(1), the Company also does not meet the alternative of market value of listed securities of $35 million under NASDAQ Listing Rule 5550(b)(2) or net income from continuing operations of $500,000 in the most recently completed fiscal year or in two of the last three most recently completed fiscal years under NASDAQ Listing Rule

5550(b)(3), and the Company is no longer in compliance with the NASDAQ Listing Rules. On March 18, 2020, the Company received written notice from NASDAQ stating that the Company complies with the Listing Rule 5550(b)(1).

On November 4, 2019, the Company received a letter from the Nasdaq notifying the Company that, because the closing bid price for the Company's common stock listed on Nasdaq was below $1.00 for 30 consecutive trading days, the Company no longer meets the minimum bid price requirement for continued listing on Nasdaq under Nasdaq Marketplace Rule 5550(a)(2), which requires a minimum bid price of $1.00 per share. On April 14, 2020, the Company received a written notification from the Nasdaq indicating that the Company has regained compliance with the $1.00 minimum closing bid price requirement and that the matter is now closed.

On March 1, 2022, the Company received a letter from the Nasdaq Stock Market ("Nasdaq") notifying the Company that, because the closing bid price for the Company's common stock listed on Nasdaq was below $1.00 for 30 consecutive trading days, the Company no longer meets the minimum bid price requirement for continued listing on Nasdaq under Nasdaq Marketplace Rule 5550(a)(2), which requires a minimum bid price of $1.00 per share (the "Minimum Bid Price Requirement"). The Company has a period of 180 calendar days from the date of notification, until August 29, 2022 (the "Compliance Period"), to regain compliance with the Minimum Bid Price Requirement. On August 30, 2022, the Company received a written notification from the NASDAQ Stock Market Listing Qualifications Staff (the "Staff") indicating that the Company has been granted an additional 180 calendar day period or until February 27, 2023, to regain compliance with the $1.00 minimum closing bid price requirement for continued listing on the NASDAQ Capital Market pursuant to NASDAQ Listing Rule. On January 26, 2023, the Company filed with the Florida Secretary of State's office Articles of Amendment (the "Amendment") to amend its Second Amended and Restated Articles of Incorporation, as amended ("Articles of Incorporation"). As a result of the Amendment, the Company has authorized and approved a 1-for-5 reverse stock split of the Company's authorized shares of common stock from 300,000,000 shares to 60,000,000 shares, accompanied by a corresponding decrease in the Company's issued and outstanding shares of common stock (the "Reverse Stock Split"). The common stock will continue to be $0.001 par value. The Company's shares of common stock began to trade on the NASDAQ Stock Market on the post-Reverse Stock Split basis under the symbol "FTFT" on February 1, 2023. On February 15, 2023, the Company received a written notification from the NASDAQ Stock Market Listing Qualifications Staff indicating that the Company has regained compliance with the $1.00 minimum closing bid price requirement for continued listing on the NASDAQ Capital Market pursuant to NASDAQ Listing Rule 5550(a)(2) and that the matter is now closed.

(Emphasis in original).

67.     These statements were also false and misleading for the reasons stated below at the end of this section.

## October 15, 2023 Proxy Statement

68.     On October 13, 2023, Future FinTech filed the 2023 Proxy Statement.  Future FinTech Group, Inc., Proxy Statement (DEF 14A) (Oct. 14, 2023) ("2023 Proxy Statement").  The Director Defendants solicited the 2023 Proxy Statement.  The 2023 Proxy Statement contained material misstatements and omissions for the reasons discussed herein.

69.     The 2023 Proxy Statement asked Future FinTech stockholders to vote to, among other things, (1) reelect the Director Defendants to the Board for a one year term ending as of the Company's annual meeting of stockholders in fiscal year 2024; (2) ratify the appointment of Fortune CPA, Inc., as Future FinTech's independent registered public accounting firm for the fiscal year ending December 31, 2023; and (3) adopt and approve the Future FinTech Group Inc. 2023 Omnibus Equity Plan.  The 2023 Proxy Statement touted Defendant Huang's role in the Company stating in part "[t]he Board believes that Mr. Huang's significant experience in investment and management will be an asset to the Company and the Board."

\*      \*      \*

70.     The statements above in ¶¶ 43, 47-48, 50-51, 54, 56-57, 60-62, 64-66, 69 were materially false and misleading because they omitted the unlawful measures, specifically, manipulative trading, that Defendant Huang undertook in order to increase and try to maintain the Company's stock price to above $1 per share to prevent the Company from being delisted from the Nasdaq exchange.

71.     The above statements identified in ¶¶ 43, 47-48, 50-51, 54, 56-57, 60-62, 64-66, 69were materially false and misleading and failed to disclose material adverse facts about the Company's business, operations, and prospects.  Specifically, the Individual Defendants failed to

disclose to investors that (i) Defendant Huang manipulated the price of Future FinTech stock; (ii) the Company lied to the SEC about the nature of Defendant Huang's ownership of Future FinTech stock; (iii) Future FinTech understated its legal risk; (iv) Future FinTech did not disclose the unlawful measures Defendant Huang took to prop up the price of its stock; and (v) as a result, the Individual Defendants' positive statements about the Company's business, operations, and prospects were materially false, misleading, and lacked a reasonable basis.

72.    The 2020 Proxy Statement, 2021 Proxy Statement, 2022 Proxy Statement, and 2023 Proxy Statement (hereinafter, the "Proxy Statements") were materially misleading because they failed to disclose that: (i) although Future FinTech claimed its officers and directors adhered to the Code of Conduct, the Individual Defendants violated the Code of Conduct; (ii) contrary to the Proxy Statements' descriptions of the Board's risk oversight responsibilities, the Board and its committees did not adequately exercise these functions and were causing or permitting Future FinTech to issue false and misleading statements.

73.    The Proxy Statements were further materially misleading because they failed to disclose, *inter alia*, to investors that (i) Defendant Huang manipulated the price of Future FinTech stock; (ii) the Company lied to the SEC about the nature of Defendant Huang's ownership of Future FinTech stock; (iii) Future FinTech understated its legal risk; (iv) Future FinTech did not disclose the unlawful measures Defendant Huang took to prop up the price of its stock; and (v) as a result, the Individual Defendants' positive statements about the Company's business, operations, and prospects were materially false, misleading, and lacked a reasonable basis.

74.    The Proxy Statements perpetuated the misleading narrative about Defendant Huang's value to the Company.  They repeatedly asserted that "[t]he Board believes that Mr. Huang's significant experience in investment and management will be an asset to the Company

and the Board." This statement, presented as an established fact, was a gross mischaracterization of Huang's actual impact on Future FinTech.

75.    By consistently emphasizing Huang's supposed expertise while concealing his involvement in manipulative trading practices, the Proxy Statements systematically misled stockholders. They created a false impression of Huang's qualifications and integrity, providing an intentionally skewed basis for stockholder voting decisions. This repeated pattern of deception across multiple years underscores the pervasive nature of the misleading communications to stockholders.

76.    The language in the Proxy Statements not only failed to disclose Huang's misconduct but actively promoted a false narrative about his leadership, demonstrating a calculated effort to maintain control of the Board despite the undisclosed risks Huang posed to the Company. This series of misleading statements in consecutive proxy filings illustrates a sustained campaign of misinformation directed at Future FinTech's stockholders.

## THE MARKET LEARNS THE TRUTH

77.    On January 11, 2024, around or after market close, the SEC issued a press release entitled "SEC Charges Future FinTech CEO Shanchun Huang With Fraud and Disclosure Failures" (Press Release, Securities and Exchange Commission, SEC Charges Future FinTech CEO Shanchun Huang With Fraud and Disclosure Failures (Jan. 11, 2024) (the "SEC January 11, 2024 Press Release")) that stated the following:

> The [SEC] today charged Shanchun Huang with manipulative trading in the stock of Future FinTech Group Inc., using an offshore account shortly before he became Future FinTech's CEO in 2020. The SEC also charged Huang with failing to disclose his beneficial ownership of Future FinTech stock as well as transactions in such stock.

78.    On the same day, the SEC filed its complaint against Defendant Huang in the Southern District of New York ("SEC Complaint"). According to the SEC Complaint, Defendant

28
VERIFIED STOCKHOLDER DERIVATIVE COMPLAINT

Huang "manipulated the stock price of Future FinTech by buying hundreds of thousands of Future FinTech shares to artificially increase the company's stock price shortly before and after he became CEO in March 2020." The SEC Complaint further stated that "[t]o induce investors to purchase Future FinTech stock, Huang sought to inflate the share price of Future FinTech to avoid the company being delisted by Nasdaq." The reason that Future FinTech faced a delisting of its stock by Nasdaq was "its failure to maintain a minimum price of $1 per share, which would have made Future FinTech stock less attractive."

79.    The SEC Complaint stated the following regarding the volume and nature of Defendant Huang's manipulative trades:

> From in or about January 2020 through April 2020 (the "Relevant Period"), using a securities account maintained at an offshore financial institution, Huang engaged in manipulative trades of Future FinTech stock. Huang repeatedly traded at a volume so large it constituted a high percentage of the daily volume of Future FinTech stock transactions, placed multiple buy orders in short timeframes, placed limit buy orders (orders to buy the stock at a specified price or better) with escalating limit prices from one order to the next, and typically purchased Future FinTech stock at the top of the National Best Bid and Offer ("NBBO")[1] spread, trades that generally would not make economic sense for an investor who sought to buy the stock at the lowest available price.

80.    The SEC Complaint contained a footnote explaining that "[i]n general terms the National Best Bid and Offer ("NBBO") means the best bid (the highest price any buyer is willing to offer to buy the stock) and the best offer (the lowest price any seller is willing to accept for the stock). *See* 17 C.F.R. § 242.600(b)(50)."

81.    The SEC Complaint further noted that "[H]uang's trades were intended to, and at times did, push the Future FinTech stock price upward."

82.    In addition, the SEC Complaint stated that "upon becoming [Future FinTech's CEO] in March 2020, Huang repeatedly failed to make required public filings with the

---

[1]

VERIFIED STOCKHOLDER DERIVATIVE COMPLAINT

Commission about his beneficial ownership of Future FinTech stock and his Future FinTech stock transactions."

83.     By March of 2021, Defendant Huang had sold all his Future FinTech stock.  At that time, he filed an Initial Statement of Beneficial Ownership that "failed to state that Huang owned Future FinTech stock at the time he became CEO in March 2020 until his final shares were sold in March 2021" according to the SEC Complaint.

84.     Finally, the SEC Complaint noted that "Huang has never filed any forms with the Commission disclosing his ownership of or transactions in Future FinTech stock from January 2020 through March 2021."

85.     On this news, the price of the Company's stock dropped $0.27, or 20.93%, to close at $1.02 on January 12, 2024.

## AN INVESTOR FILES A SECURITIES CLASS ACTION

86.     On January 16, 2024 a purported purchaser of Company stock filed a securities class action complaint, captioned *Labelle v Future FinTech Group, Inc., et al.*, Case No. 2:24-cv-00247 in the United States District Court for the District of New Jersey against Future FinTech and Defendants Chen and Huang (the "Securities Class Action").  The Securities Class Action alleges that throughout the class period of March 10, 2020, to January 11, 2024, Defendants made materially false and/or misleading statements, failing to disclose material adverse facts about the Company's business, operations, and prospects.

## THE INDIVIDUAL DEFENDANTS' MISCONDUCT
## DIRECTLY AND PROXIMATELY CAUSES DAMAGES TO FUTURE FINTECH

87.     As a result of the Individual Defendants' improprieties, Future FinTech disseminated improper public statements concerning Future FinTech's operations, prospects, and internal controls.  This misconduct has devastated Future FinTech's credibility.

88.     As a direct and proximate result of the Individual Defendants' actions, Future FinTech has expended, and will continue to expend, significant sums of money defending and paying any settlement in the Securities Class Action.

89.     As a direct and proximate result of the Individual Defendants' actions as alleged above, Future FinTech's market capitalization has been substantially damaged, losing millions of dollars in value because of the conduct described herein.

90.     Lastly, the actions of the Individual Defendants have irreparably damaged Future FinTech's corporate image and goodwill.  For at least the foreseeable future, Future FinTech will suffer from what is known as the "liar's discount," a term applied to the stocks of companies that have been implicated in illegal behavior and have misled the investing public, such that Future FinTech's ability to raise equity capital or debt on favorable terms in the future is now impaired.

## CONSPIRACY, AIDING AND ABETTING, AND CONCERTED ACTION

91.     In committing the wrongful acts alleged herein, the Individual Defendants have pursued, or joined in the pursuit of, a common course of conduct, and have acted in concert with and conspired with one another in furtherance of their wrongdoing.  The Individual Defendants caused the Company to conceal the true facts as alleged herein.  The Individual Defendants further aided and abetted and/or assisted each other in breaching their respective duties.

92.     The purpose and effect of the conspiracy, common enterprise, and/or common course of conduct were, among other things, to (i) facilitate and disguise the Individual Defendants' violations of law, including breaches of fiduciary duty and unjust enrichment; (ii) conceal adverse information concerning the Company's operations, financial condition, future business prospects and internal controls; and (iii) artificially inflate the Company's stock price.

93.     The Individual Defendants accomplished their conspiracy, common enterprise, and/or common course of conduct by causing the Company purposefully, recklessly, or with gross

negligence to engage in improper accounting methods, conceal material facts, fail to correct such misrepresentations, and violate applicable laws. In furtherance of this plan, conspiracy, and course of conduct, Individual Defendants collectively and individually took the actions set forth herein. The Individual Defendants described herein were direct, necessary, and substantial participants in the common enterprise, and/or common course of conduct complained here because the action described herein occurred under the authority and approval of the Board.

94.     Each of the Individual Defendants aided, abetted, and rendered substantial assistance in the wrongs complained of herein. In taking such actions to substantially assist the commission of the wrongdoing complained of herein, each of the Individual Defendants acted with actual or constructive knowledge of the primary wrongdoing, either took direct part in or substantially assisted the accomplishment of that wrongdoing and was or should have been aware of his or her overall contribution to and furtherance of the wrongdoing.

95.     At all times relevant hereto, each of the Individual Defendants was the agent of each of the other Individual Defendants and Future FinTech and was at all times acting within the course and scope of such agency.

**PLAINTIFF HAS BEEN A STOCKHOLDER SINCE THE
ALLEGED WRONGDOING AND WILL FAIRLY AND ADEQUATELY
REPRESENT THE COMPANY'S AND ITS STOCKHOLDERS' INTERESTS**

96.     Plaintiff incorporates by reference and realleges each and every allegation set forth above as though fully set forth herein.

97.     Plaintiff brings this action derivatively in the right and for the benefit of the Company to redress the Individual Defendants' misconduct.

98.     Plaintiff is an owner of Future FinTech common stock and has been an owner of Future FinTech common stock since the wrongdoing alleged herein.

99.    Plaintiff will adequately and fairly represent the interests of the Company and its stockholders in enforcing and prosecuting the Company's rights.

## DEMAND IS FUTILE

### *Demand Is Futile Because Each Member of the Board Faces a Substantial Likelihood of Personal Liability*

100.    At the time Plaintiff commenced this action, the Board consisted of the five Director Defendants: Lau, Fuyou Li, Ying Li, and Zhao.  The Director Defendants are incapable of making an independent and disinterested decision to institute and vigorously prosecute this action.

101.    The Director Defendants all face a substantial likelihood of liability for their individual misconduct.  The Director Defendants were directors throughout the time of the false and misleading statements and, as such, had a fiduciary duty to ensure the accuracy of the Company's SEC filings, press releases, and other public statements and presentations concerning Future FinTech's business, operations, prospects, internal controls, and financial statements.

102.    Moreover, the Director Defendants owed and owe a duty to, in good faith and with due diligence, exercise reasonable inquiry, oversight, and supervision to ensure that the Company's internal controls were sufficiently robust and effective and were being implemented effectively and that the Board's duties were being discharged in good faith and with the required diligence and due care.  Instead, they knowingly and consciously reviewed, authorized, and/or caused the publication of the materially false and misleading statements discussed above that caused the Company's stock to trade at artificially inflated prices.

103.    The Director Defendants also approved the Proxy Statements and, therefore, face a substantial likelihood of personal liability because of the false and misleading statements contained therein.

VERIFIED STOCKHOLDER DERIVATIVE COMPLAINT

104.    The Director Defendants face a substantial likelihood of personal liability because of their conscious and knowing authorization of false and misleading statements, their failure to timely correct such statements, their failure to take necessary and appropriate steps to ensure that the Company's internal controls were sufficiently robust and effective and were being implemented effectively, and their failure to take necessary and appropriate steps to ensure that the Board's duties were being discharged in good faith and with the required diligence constitute breaches of the fiduciary duties of loyalty and good faith, for which the Director Defendants face a substantial likelihood of liability.

105.    If the Director Defendants were to bring a suit on behalf of Future FinTech to recover damages sustained as a result of this misconduct, they would expose themselves to significant liability.  For this reason, Plaintiffs' making a demand would be futile.

### *The Audit Committee Defendants Face a Greater Likelihood of Personal Liability*

106.    The Audit Committee Defendants (Defendants Lau, Fuyou Li, and Zhao), as members of the Audit Committee during the Relevant Period, participated in and knowingly approved the filing of false financial statements.  More specifically, as members of the Audit Committee, the Audit Committee Defendants were obligated to review the Company's annual and quarterly reports to ensure their accuracy.  Instead, the Audit Committee Defendants, as members of the Audit Committee, failed to ensure the integrity of the Company's financial statements and financial reporting process and its systems of internal accounting and financial controls and other financial information provided by the Company as required by the Audit Committee Charter.  For this reason, the Audit Committee Defendants cannot exercise disinterested business judgment in considering a demand.

### *Defendant Ying Li Lacks Independence*

107.    Defendant Ying Li is not an independent director.  Ying Ling is not independent because her principal occupation is vice president of the Company and from October 2011 to December 2019, Ying Li served as the secretary of the Board of the Company.  Indeed the 2023 Proxy Statement does not name Defendant Ying Li as independent.  Accordingly, demand is futile as to Defendant Ying Li.

## FIRST CAUSE OF ACTION
## Against the Individual Defendants for Breach of Fiduciary Duties

108.    Plaintiff incorporates by reference and realleges each and every allegation set forth above as though fully set forth herein.

109.    Each Individual Defendant owed to the Company the duty to exercise candor, good faith, and loyalty in the management and administration of Future FinTech's business and affairs.

110.    Each of the Individual Defendants violated and breached his or her fiduciary duties of candor, good faith, loyalty, reasonable inquiry, oversight, and supervision.

111.    The Individual Defendants' conduct set forth herein was due to their intentional or reckless breach of the fiduciary duties they owed to the Company.  The Individual Defendants intentionally or recklessly breached or disregarded their fiduciary duties to protect the rights and interests of Future FinTech.

112.    In breach of their fiduciary duties owed and owe to Future FinTech, the Individual Defendants willfully or recklessly made, or caused or permitted the Company to make, false and misleading statements and omissions of material fact that failed to disclose, *inter alia*, that (i) Defendant Huang manipulated the price of Future FinTech stock; (ii) the Company lied to the SEC about the nature of Defendant Huang's ownership of Future FinTech stock; (iii) Future FinTech

understated its legal risk; and (iv) Future FinTech did not disclose the unlawful measures Defendant Huang took to prop up the price of its stock.

113.    Accordingly, Future FinTech's public statements were materially false, misleading, and lacked a reasonable basis during the Relevant Period, thereby causing the stock to trade at artificially inflated prices.

114.    The Individual Defendants failed to and caused the Company to fail to rectify any of the wrongs described herein or correct the false and misleading statements and omissions of material fact referenced herein, thereby, rendering themselves personally liable to the Company for breaching their fiduciary duties.

115.    The Individual Defendants also failed to maintain an adequate system of oversight, disclosure controls and procedures, and internal controls in breach of their fiduciary duties.

116.    The Individual Defendants had actual or constructive knowledge that the Company issued materially false and misleading statements, and they failed to correct the Company's public statements.  The Individual Defendants had actual knowledge of the misrepresentations and omissions of material facts set forth herein or acted with reckless disregard to the truth in that they failed to ascertain and disclose such facts even though such facts were available to them.  Such material misrepresentations and omissions were committed knowingly or recklessly and for the purpose and effect of artificially inflating the price of the Company's securities.

117.    The Individual Defendants had actual or constructive knowledge that they had caused the Company to improperly engage in the fraudulent schemes set forth herein and to fail to maintain adequate internal controls.  The Individual Defendants had actual knowledge that the Company was engaging in the fraudulent schemes set forth herein, and that internal controls were not adequately maintained or acted with reckless disregard for the truth in that they caused the

Company to improperly engage in the fraudulent schemes and to fail to maintain adequate internal controls, even though such facts were available to them.  Such improper conduct was committed knowingly or recklessly and for the purpose and effect of artificially inflating the price of the Company's securities.  The Individual Defendants, in good faith, should have taken appropriate action to correct the schemes alleged herein and to prevent them from continuing to occur.

118.    These actions were not a good-faith exercise of prudent business judgment to protect and promote the Company's corporate interests.

119.    As a direct and proximate result of the Individual Defendants' breaches of their fiduciary obligations, Future FinTech has sustained and continues to sustain significant damages. As a result of the misconduct alleged herein, the Individual Defendants are liable to the Company.

**SECOND CAUSE OF ACTION**
**Against the Individual Defendants for**
**Violations of § 14(a) of the Exchange Act and SEC Rule 14a-9**

120.    Plaintiff incorporates by reference and realleges each and every allegation set forth above as though fully set forth herein.

121.    Rule 14a-9, promulgated pursuant to Section 14(a) of the Exchange Act, provides that no proxy statement shall contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading."  17 C.F.R. § 240.14a-9.

122.    The Proxy Statements violated Section 14(a) and Rule 14a-9 because they solicited Future FinTech stockholder votes for, *inter alia*, director reelection, while simultaneously misrepresenting and/or failing to disclose the Company's actual business, operations, and prospects.

123.    The Individual Defendants made untrue statements of material facts and omitted to state material facts necessary to make the statements that were made not misleading in violation of Section 14(a) and Rule 14a-9.  By virtue of their positions within the Company and roles in the process and in the preparation of the Proxy Statements, the Individual Defendants were aware of this information and of their duty to disclose this information in the  Proxy Statements.

124.    The Individual Defendants knew that the statements contained in the Proxy Statements were materially false and misleading.

125.    The omissions and false and misleading statements in the Proxy Statements are material in that a reasonable stockholder would consider them important in deciding how to vote on the re-election of directors.  Indeed, a reasonable investor would view a full and accurate disclosure as significantly altering the "total mix" of information made available in the Proxy Statements and in other information reasonably available to stockholders.

126.    As a direct and proximate result of the dissemination of the false and misleading Proxy Statements that the Individual Defendants used to obtain stockholder approval of and thereby re-elect directors, Nominal Defendant Future FinTech suffered damage and actual economic losses (i.e., wrongful re-election of directors) in an amount to be determined at trial.

**THIRD CAUSE OF ACTION**
**<u>Against the Individual Defendants for Unjust Enrichment</u>**

127.    By their wrongful acts, violations of law, and false and misleading statements and omissions of material fact that they made or caused to be made, the Individual Defendants were unjustly enriched at the expense of, and to the detriment of, Future FinTech.

128.    The Individual Defendants benefitted financially from the improper conduct, received unjustly lucrative bonuses tied to the false and misleading statements, and received bonuses, stock options, or similar compensation from Future FinTech that was tied to the

VERIFIED STOCKHOLDER DERIVATIVE COMPLAINT

performance or artificially inflated valuation of Future FinTech, or received compensation that was unjust in light of the Individual Defendants' bad faith conduct.

129.    Plaintiff, as a stockholder and representative of Future FinTech, seeks restitution from the Individual Defendants and seeks an order from this Court disgorging all profits—including from insider sales, benefits, and other compensation, including any performance-based or valuation-based compensation—obtained by the Individual Defendants from their wrongful conduct and breach of their fiduciary duties.

130.    Plaintiff, on behalf of Future FinTech, has no adequate remedy at law.

**FOURTH CAUSE OF ACTION**
**Against all the Individual Defendants for Aiding and Abetting**

131.    Plaintiff incorporates by reference and realleges each and every allegation set forth above, as though fully set forth herein.

132.    Each of the Individual Defendants acted and is acting with knowledge of, or with disregard to, the fact that the Defendants are in breach of their fiduciary duties to Future FinTech and has participated in a conspiracy in breach of fiduciary duties.

133.    In committing the wrongful acts alleged herein, each of the Individual Defendants has pursued, or joined in the pursuit of, a common course of conduct.  The Individual Defendants have acted in concert with and conspired with one another in furtherance of their common plan or design.  In addition to pursuing the wrongful conduct that gives rise to their primary liability, the Individual Defendants also aided, abetted, and assisted each other in breaching their respective duties.

134.    The Individual Defendants collectively and individually initiated and followed a course of conduct that violated the federal securities laws; authorized corporate actions to serve their own personal interests rather than the interests of the Company and its stockholders;

misrepresented material facts about the Company, its financial condition, and business prospects; prevented the disclosure of material information necessary to make statements complete and accurate; and failed to implement and maintain an adequate system of internal controls and corporate governance practices.

135.    The purpose and effect of the Individual Defendants' conspiracy, common enterprise, and common course of conduct was, among other things, to disguise the Defendants' violations of law, including violations of the federal securities laws and breaches of fiduciary duty.

136.    Each of the Individual Defendants played a direct, necessary, and substantial part in the conspiracy, common enterprise, and common course of conduct complained of herein.

137.    Each of the Individual Defendants aided, abetted, and rendered substantial assistance in the wrongs complained of herein.  In taking such actions to substantially assist the commission of the wrongdoing complained of herein, the Individual Defendants acted with knowledge of the primary wrongdoing, substantially assisted the accomplishment of that wrongdoing, and were aware of their overall contributions to and furtherance of the wrongdoing.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment as follows:

A.    Declaring that Plaintiff may maintain this derivative action on behalf of Future FinTech and that Plaintiff is a proper and adequate representative of the Company;

B.    Awarding the amount of damages sustained by the Company as a result of the Individual Defendants' breaches of fiduciary duties and violations of the federal securities laws;

C.    Awarding prejudgment interest to the Company;

D.    Granting appropriate equitable relief to remedy Individual Defendants' breaches of fiduciary duties and other violations of law;

E.    Awarding to Plaintiff the costs and disbursements of the action, including

reasonable attorneys' fees, accountants' and experts' fees and costs and expenses; and

      F.      Granting such other and further relief as the Court deems just and proper.

## **JURY TRIAL DEMANDED**

      Plaintiff hereby demands a trial by jury.


Dated:  November 29, 2024               Respectfully submitted,

                                    BRAGAR EAGEL & SQUIRE, P.C.

                                    */s/ Lawrence P. Eagel*

                                    Lawrence P. Eagel (D.N.J. #038881983)
                                    Melissa A. Fortunato (D.N.J. #071502013)
                                    810 Seventh Avenue, Suite 620
                                    New York, New York 10019
                                    Telephone: (212) 308-5858
                                    Facsimile: (212) 214-0506
                                    eagel@bespc.com
                                    fortunato@bespc.com

                                    *Attorneys for Plaintiff*

VERIFIED STOCKHOLDER DERIVATIVE COMPLAINT

**VERIFICATION**

I, Steve Kast, declare that I have reviewed the Verified Stockholder Derivative Complaint ("Complaint") prepared on behalf of Future Fintech Group, Inc., and authorize its filing. I have reviewed the allegations made in the Complaint, and as to those allegations of which I have personal knowledge, I believe those allegations to be true. As to those allegations of which I do not have personal knowledge, I rely on my counsel and their investigation and, for that reason, believe them to be true. I further declare that I am a current holder of Future Fintech Group, Inc. stock and have continuously held Future Fintech Group, Inc. stock from the time of the wrongdoing alleged herein until the present. I declare under penalty of perjury that the foregoing is true and correct.

Executed this 27 day of November 2024.

_Steve Kast_
Steve Kast (Nov 27, 2024 14:19 EST)
Steve Kast